ACCEPTED
01-14-00904-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/2/2015 3:22:35 PM
CHRISTOPHER PRIN
CLERK

**NO. 01-14-00904-CV**

**IN THE COURT OF APPEALS**
**FOR THE FIRST DISTRICT OF TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/2/2015 3:22:35 PM
CHRISTOPHER A. PRINE
Clerk

GRAMERCY ADVISORS LLC, GRAMERCY ASSET MANAGEMENT LLC, GRAMERCY LOCAL MARKETS RECOVERY FUND LLC, AND GRAMERCY FINANCIAL SERVICES LLC,

*Defendants-Appellants,*

v.

R.K. LOWRY, JR., ET AL.,

*Plaintiffs-Appellees.*

From the District Court of Harris County, Texas, 80th Judicial District;
Trial Court Case No. 2008-74262

**APPENDIX IN SUPPORT OF DEFENDANTS-APPELLANTS' BRIEF**

TO THE HONORABLE FIRST COURT OF APPEALS:

Appellants Gramercy Advisors LLC, Gramercy Asset Management LLC, Gramercy Local Markets Recovery Fund LLC, and Gramercy Financial Services LLC (collectively, "Gramercy") submit this Appendix in Support of Appellant's Opening Brief on the Merits.

| APPENDIX | DESCRIPTION |
|---|---|
| **Appendix A** | Appealable Order |
| **Appendix B** | This Court's Memorandum Opinion Reversing the 80th District Court's Order Denying Financial Strategy Group, PLC's Special Appearance in Cause No. 01-14-00273-CV |

| | |
|---|---|
| **Appendix C** | Cook County, Illinois Circuit Court's Opinion Dismissing Suit Against Gramercy for Lack of Personal Jurisdiction in *Coe et al. v. BDO Seidman, L.L.P.*, Cause No. 12 L 13691, dated Nov. 26, 2014 (unpublished) |
| **Appendix D** | Cook County, Illinois Circuit Court's Opinion Dismissing Suit Against Gramercy for Lack of Personal Jurisdiction in *Kaufman et al. v. BDO Seidman L.L.P.*, Cause No. 12 L 13692, dated Nov. 26, 2014 (unpublished) |

Respectfully submitted,
**MUNSCH HARDT KOPF & HARR, P.C.**


By:__/s/ David C. Mattka_____
David C. Mattka (TSB No. 13231500)
MUNSCH HARDT KOPF & HARR, P.C.
401 Congress Avenue, Suite 3050
Austin, Texas 78701
(512) 391-6100 (telephone)
(512) 391-6149 (facsimile)
Email: dmattka@munsch.com

*Lead Counsel for Defendants-Appellants*


Additional Counsel:

Sean F. O'Shea (admitted *pro hac vice*)
Michael E. Petrella (admitted *pro hac vice*)
Daniel M. Hibshoosh (admitted *pro hac vice*)
O'SHEA PARTNERS LLP
521 Fifth Avenue, 25th Floor
New York, New York 10175
(212) 682-4426 (telephone)
(212) 682-4437 (facsimile)
Email: soshea@osheapartners.com
Email: dhibshoosh@osheapartners.com
Email: mpetrella@osheapartners.com

# CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Appellate Procedure, I certify that a true and correct copy of this *Appendix in Support of Defendants-Appellant's Brief* was served upon the following counsel of record, by the court's electronic filing system on February 2, 2015:

**<u>Via E-Filing & Electronic Mail:</u>**
W. Ralph Canada, Jr.
David R. Deary
Wilson Wray
Tyler Simpson
Loewinsohn Flegle Deary, LLP
12377 Merit Drive, Suite 900
Dallas, TX 75271
*Attorney for Plaintiffs-Appellees*

/s/  David C. Mattka
David C. Mattka

**APPENDIX A**

FILED
Chris Daniel
District Clerk

OCT 17 2014

Time:_____
Harris County, Texas

CAUSE NO. 2008-74262

P-1
_____
SPAPY
MODIY

| | | |
|---|---|---|
| R. K. LOWRY, JR., et al, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | 80th JUDICIAL DISTRICT |
| | § | |
| BDO SEIDMAN, L.L.P., et al, | § | |
| | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

## ORDER

**On October 17, 2014, this Court heard the Special Appearance and Amended Special Appearance of** Defendants Gramercy Advisors, LLC, Gramercy Asset Management, LLC, Gramercy Local Markets Recovery Fund, LLC, Gramercy Financial Services, LLC, ~~Steamboat Capital Management, LLC, and Jay A. Johnston~~ (collectively "Gramercy"). Having considered the Special Appearance, Amended Special Appearance, the parties' responses and replies, oral argument, and all affidavits, depositions, and discovery submitted in support and in opposition, the Court is of the opinion that the Special Appearance and Amended Special Appearance should be DENIED.

It there therefore ORDERED that Gramercy's Special Appearance and Amended Special Appearance is DENIED.

Signed and Ordered this ___17th___ day of ___October___, 20_14_.

OCT 17 2014

_____
Judge Presiding

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Certified Document Number: 62825834 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this    February 2, 2015

Certified Document Number:        62825834 Total Pages:  1

Chris Daniel, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**APPENDIX B**

Opinion issued January 27, 2015



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-14-00273-CV

————————————

**FINANCIAL STRATEGY GROUP, PLC, Appellant**

**V.**

**R. K. LOWRY, JR., L-FALLING CREEK, LLC, RUSSELL A. CHABAUD, R-RAC WIMBLEDON LLC, JOHN P. MOFFITT, J-JASON LLC, RUSSELL A. CHABAUD, TRUSTEE OF THE RUSSELL G. CHABAUD 1999 INVESTMENT TRUST, R-RUSSELL WIMBLEDON, LLC, RUSSELL A. CHABAUD, TRUSTEE OF THE ASHLEY CHABAUD 1999 INVESTMENT TRUST, R-ASHLEY WIMBLEDON, LLC, RUSSELL A. CHABAUD, TRUSTEE OF THE AUDREY CHABAUD 1999 INVESTMENT TRUST, R-AUDREY WIMBLEDON, LLC, LMC RECOVERY FUND, LLC, UNION GAS FUNDING I, L.P., RANA HOLDINGS, LLC, WESTY I LLC, AND MOGI, LLC, Appellees**

On Appeal from the 80th District Court
Harris County, Texas
Trial Court Case No. 2008-74262

**MEMORANDUM OPINION**

This is an accelerated appeal from an order denying a special appearance. We reverse.

## BACKGROUND

Plaintiffs sued numerous defendants complaining of tax investment strategies marketed to plaintiffs for use on their federal tax returns for the tax years 2000 through 2005 ("Investment Strategies"). Defendant Financial Strategy Group ("Financial Strategy") filed a special appearance, which the trial court denied. This appeal followed.

### A.    Plaintiffs' Allegations

Plaintiffs' petition alleges that defendants "jointly and in concert developed, promoted, sold, and implemented the Investment Strategies as a part of a conspiracy to commit fraud." According to plaintiffs, defendants "counseled and advised Plaintiffs to undertake the Investment Strategies, claiming the Investment Strategies would yield a substantial profit and minimize Plaintiffs' tax liability." Plaintiffs further alleged that at the time the defendants sold the Investment Strategies to the plaintiffs, they knew—or should have known—that "the Investment Strategies would not and could not yield the investment results or tax treatment claimed." Indeed, plaintiffs' petition contends, the defendants "knew, at the time they promoted and sold the Investment Strategies to Plaintiffs, that federal authorities were investigating the legality of similar 'abusive tax shelters.'"

2

Despite defendants' knowledge, they did not inform plaintiffs. Defendants' motive, according to plaintiffs, "was to extract millions of dollars in fees and commissions from Plaintiffs." As a result of their detrimentally relying on defendants' expertise, advice and representations about the legality and propriety of the Investment Strategies, plaintiffs entered into illegal and abusive tax shelters, subjecting them to "substantial back taxes, interest, penalties, and other damages."

## B.    Allegations specific to Financial Strategy Group[1]

Plaintiffs' petition alleged that defendant-appellant Financial Strategy is a Tennessee corporation with its principal place of business in Tennessee that "is continuously and systematically engaged in business and/or was continuously and systematically engaged in business in the State of Texas, committed tortious acts in Texas and entered into contracts with Texas residents."

The petition further alleged the following involving Financial Strategy:

> Unbeknownst to Plaintiffs, BDO, Gramercy, Sidley Austin, De Castro West, Financial Strategy Group and others (including Lehman) jointly conspired to design the Investment Strategies before BDO and Gramercy, with the assistance of others including MLB and Financial Strategy, executed their plan to promote and sell the Investment Strategies to their own clients—such as Plaintiffs. Unbeknownst to Plaintiffs, Sidley Austin and De Castro West agreed that BDO Seidman and Gramercy could promise prospective clients, such as Plaintiffs, that they would receive tax opinion letters certifying the soundness and legality of the Investment Strategies being sold. For a substantial fee, Sidley Austin and De Castro West issued tax opinions

---

[1]    The facts recited in this section are taken from Plaintiffs' petition.

3

to Plaintiffs that purported to substantiate the bona fides of certain of the Investment Strategies.

. . . .

Despite the Strategy Defendants' knowledge that the IRS would likely deny the Investment Strategies, Financial Strategy and BDO prepared certain federal tax returns for an entity used to implement the Investment Strategies, and the Strategy Defendants advised Plaintiffs to file individual federal tax returns implementing the Investment Strategies. Even after the Strategy Defendants learned that the IRS had begun to audit and disallow capital and other losses claimed through similar tax strategies, the Strategy Defendants continued to advise Plaintiffs to use the Investment Strategies to offset income and/or capital gains on their income tax returns.

. . . .

Financial Strategy and BDO prepared certain federal tax returns for an entity that was used to implement the Investment Strategies. At no point in time did BDO, Gramercy, Sidley Austin, De Castro West, Financial Strategy, or the Other Participants ever disclose to Plaintiffs that they had fraudulently conspired together to design, promote, sell and implement the Investment Strategies, and were in no way independent from each other.

. . . .

By design, full implementation of the Investment Strategy took several years. Plaintiffs classify the defendants by steps in that strategy. Plaintiffs' claims against Financial Strategy only involve the Investment Strategies in 2002 and 2003, but their allegations related to the scheme for earlier years are included below for context.

### 1. 2000 Digital Option Strategy

In June 2000, plaintiffs received substantial proceeds from the sale of certain oil and gas properties and wanted to diversify their investment portfolio. In September 2000, Defendants Randy Mooreman (a tax partner with defendant BDO Seidman's Houston office) and Paul Shanbrom (a member of BDO's Tax Solutions Group) pitched certain of the Investment Strategies—specifically "distressed debt strategy"—to plaintiffs.

Without disclosing agreements between BDO and defendant Gramercy, Defendants at that meeting recommended that plaintiffs engage Gramercy as an expert in distressed debt investments. Plaintiffs were required to execute a consulting agreement with BDO as a condition of their engaging Gramercy. And, as part of the Investment Strategy, Shanbrom advised plaintiffs to invest an additional $15,000,000 with Gramercy—unrelated to the distressed debt strategy—to provide a diversified portfolio and strengthen plaintiffs' position in the event of an IRS audit. Plaintiffs were also told that they would need to immediately invest with Gramercy in November 2000 to implement the distressed debt strategy for 2000. As part of the consulting agreement with BDO, plaintiffs were promised opinion letters from Sidley Austin opining that the Investment Strategies were legal, and free representation by BDO in any resulting IRS audit.

Plaintiffs' petition alleges that, unbeknownst to plaintiffs, the "2000 Strategy Defendants" (which included Gramercy, BDO, and several individuals) invested plaintiffs' funds in a "digital option strategy" rather than a distressed debt strategy because there was not sufficient time to implement the distressed debt strategy.

LMC Recovery Fund LLC is a defendant company into which plaintiffs (through their respective LLCs formed to purchase options) contributed option positions in December 2000 as part of the Investment Strategies. After the options expired, creating gains or losses, then plaintiffs also contributed cash and other assets to LMC. Plaintiffs then contributed their interest in LMC to an S Corporation. That S Corporation sold the capital or ordinary assets contributed by plaintiffs, creating substantial losses because the assets had an artificially inflated basis.[2] These losses could be used on plaintiffs' tax return to offset income and gains from other sources, reducing or eliminating plaintiffs' tax liability.

Sidley Austin's opinion letter opined that the digital option strategies were legal and that LMC Recovery Fund LLC would be classified as a partnership for tax purposes. In 2001, BDO prepared the 2000 federal tax return for LMC Recovery Fund and provided a copy of the return plaintiffs. In reliance on the 2000 Strategy Defendants' advice, plaintiffs included—on their individual 2000

---

[2] This is because the options' bases were increased by the premium paid to purchase the options, but not decreased by the premium received by plaintiffs on the sale of certain options.

tax returns—the losses purportedly generated from the 2000 distressed option strategy.

### 2. 2001 Distressed Debt Strategy

Under the advice of BDO, Gramercy, and Sidley Austin, plaintiffs entered into distressed debt transactions designed to create losses to offset other income or game. LMC Recovery Fund LLC was again instrumental in the strategy. In April 2001 and July 2001, plaintiffs made capital contributions to LMC Recovery Fund. Brazilian and Bulgarian companies then contributed certain distressed debt assets[3] to the Gramercy Local Markets Recovery Fund, LLC, which, in turn, contributed the distressed debt instruments to LMC in exchange for a membership interest therein. The plaintiffs purchased additional interest in LMC from the Brazilian and Bulgarian interest-holders. Finally, LMC sold a portion of the distressed debt instruments, generating losses.

Sidley Austin's opinion letters again advised that these transactions were legal and that LMC Recovery Fund LLC would be treated as a partnership for tax purposes. Plaintiffs and other contributors to LMC (Gramercy Local Markets Recovery Fund and the Brazilian and Bulgarian companies) would be considered the partners. BDO Seidman prepared the 2001 federal return for LMC and

---

[3] Distressed debt instruments are those that can be purchased at a significant discount from the face value, such that they have a significant built-in loss through their high basis but low value.

provided a copy of the return to plaintiffs. In reliance on the 2001 Strategy Defendants' advice, plaintiffs included—on their individual 2001 tax returns—the losses purportedly generated from the 2001 distressed debt strategy.

### 3. The 2002 Distressed Debt Strategy (involving Financial Strategy).

The 2002 distressed debt strategy entailed LMC selling additional portions of the distressed debt purchased in 2001 in December 2002, thereby creating a purported loss for plaintiffs in 2002. Defendant DeCastro West issued opinion letters that the strategies were legal, and that LMC would be treated as a partnership for tax purposes. Each of LMC contributors would be treated as a partner of LMC Recovery (i.e., Plaintiffs, Gramercy Local Markets Recovery Fund, and the Brazilian and Bulgarian companies). DeCastro's opinion letter also provided that a portion of LMC Recovery's losses would be allocable to plaintiffs as transferee and holder of original contributors' interests.

Appellant-defendant Financial Strategy prepared the 2002 tax return for LMC Recovery Fund and prepared the corresponding Texas-resident plaintiffs' scuedule K-1s. LMC's 2002 tax return listed a Connecticut address for LMC, and designated a non-Texas Gramercy-related entity as the Tax Matters Partner for the IRS to contact about the return. Plaintiffs' petition alleges that, "[i]n reliance on the 2002 Strategy Defendants' advice, opinions, and instructions and the 2002 federal tax return for LMC Recovery Fund LLC, the Plaintiffs signed and filed

8

their federal tax returns for the year 2002 in approximately October 2003." The plaintiffs included the losses generated by the 2002 Distressed Debt Strategy on their 2002 tax returns.

**4.    The 2003 Distressed Debt Strategy (involving Financial Strategy).**

The 2003 distressed debt strategy followed the same steps as earlier years—i.e. in 2002, a different Brazilian company contributed certain distressed debt instruments to a Delaware LLC (MPATRN LLC), which, in turn, contributed the debt to LMC in exchange for a membership interest. Plaintiffs then purchased additional interests in LMC from MPARTN. In 2003, LMC sold portions of the original debt from 2001 and additional debt acquired in 2002. Defendant De Castro West issued opinion letters that the strategies were legal, and that LMC Recovery Fund would be treated as a partnership for tax purposes. Contributors to the LMC Recovery Fund would be treated as the partners. (i.e., Plaintiffs, Gramercy Local Markets and the Brazilian and Bulgarian companies). DeCastro West also opined that LMC losses were allocable to plaintiffs as transferee and holders of the original contributors' interests.

Appellant-defendant Financial Strategy prepared the 2003 tax return for LMC and the Texas-resident plaintiffs' schedule K-1s. For the first time, LMC's 2003 return listed a Texas, rather than a Connecticut, address. It also designated Randall Lowry, a Texas resident at a Texas address, as the Tax Matters Partner for

the IRS to contact about the return. Plaintiffs' petition alleges that, "[i]in reliance on the 2003 Strategy Defendants' advice, opinions, and instructions and the 2002 federal tax return for LMC Recovery Fund LLC, the Plaintiffs signed and filed their federal tax returns for the year 2003 in approximately October 2004." The plaintiffs included the losses generated by the 2003 Distressed Debt Strategy on their 2003 tax returns.

### 5. 2004-2008

A new distressed-debt strategy was pursued in 2004 and 2005 following the same scheme and many of the same plaintiffs and defendants. LMC was not utilized in the scheme, however, and defendant-appellant Financial Strategy did not prepare returns related to this new strategy.

Financial Strategy continued preparing the LMC tax returns and related Texas-resident schedule K-1s through at least 2008, and continued to list a Texas address for LMC and its tax partner.

## C. Financial Strategy Group, PLC's Special Appearance

On June 19, 2009, Financial Strategy filed an unverified special appearance alleging that it does not have sufficient minimum contacts with Texas to confer specific personal jurisdiction over it. As evidence, Financial Strategy's motion attached the first of three affidavits of its Managing Member, Michael Andrew Shaul. That affidavit explained that Financial Strategy is a Tennessee LLC

10

professional firm of Certified Public Accountants that is not licensed to do business in Texas. It further averred that Financial Strategy does not maintain offices, employees, property, post office boxes, or telephone listings in Texas. None of Financial Strategy's CPAs are licensed to practice in Texas, and Financial Strategy has never conducted any advertising, solicitation, marketing, or other promotional activities in Texas or directed at Texas. The Shaul affidavit also stated:

> None of the actions complained about by plaintiffs in this case occurred in the State of Texas. To the contrary, the federal income tax returns prepared by FSG at issue in this lawsuit concern LMC Recovery Fund, LLC, a Delaware Limited Liability Company with its principal place of business in Greenwich, Connecticut. None of the work performed by FSG with regard to such tax returns was done in Texas-all the work was done in FSG's office in Tennessee. Moreover, none of the tax returns at issue were sent by FSG to anyone in Texas. Rather, such tax returns when prepared were sent to the managing member of LMC Recovery Fund LLC, who was located in Greenwich, Connecticut.

> FSG has not committed any tort in Texas. FSG never entered into any contract with Plaintiffs or anyone else located in Texas. Plaintiff's claims do not arise from and are not related to any activity conducted by FSG in Texas. FSG has no substantial connection with Texas arising from any action or conduct of FSG purposefully directed toward Texas. FSG has never had continuous or systematic contacts with Texas necessary for the Court to assert jurisdiction over it.

> FSG has never filed a lawsuit in Texas and has never been sued before in Texas. FSG has never appointed the Texas Secretary of State, or anyone else, as FSG's agent for service of process in Texas as FSG has not purposefully availed itself of the benefits or protections of the laws of the great State of Texas.

11

It would be significantly burdensome for FSG to have to defend itself in a Texas court room as this firm has no representatives, employees or agents in Texas. All court appearances would request representatives of FSG to travel from Memphis to Houston five hundred eighty eight (588) miles which takes nearly 11 hours to drive-stay in hotels and incur additional expenses. Moreover, such time would reduce time available to service clients of the firm.

Plaintiffs' responded that the Financial Strategy "made numerous purposeful contacts with the State of Texas directly relating to the actions complained of my Plaintiffs in this case." Specifically, plaintiff's response asserted, Financial Strategy "willfully participated in a scheme to defraud Plaintiffs, *all of whom are Texas residents*"; in furtherance, it "used a Texas licensed CPA to prepares six tax returns and at least 50 partnership K-1s over a seven-year period for *Texas-resident entities*, knowing the tax documents would be delivered to and used by Plaintiffs *in Texas*." Finally, Plaintiffs argued that Financial Strategy's special appearance was not verified, and that the Shaul affidavit is "replete with legal conclusions, statements of fact that [Financial Strategy] has since admitted under oath are false, and matters outside the affiant's personal knowledge, as well as generally lacking in credibility."

Plaintiffs' response attached evidence, including: (1) excerpts from Shaul's deposition, (2) evidence that Melinda Gunn, a CPA with a Texas license, worked for Financial Strategy from 1999 to 2005, (3) engagement letters between Financial Strategy and Gramercy for preparation of LMC's tax returns, (4)

12

excerpts from LMC's tax returns and its members schedule K-1s, (5) email correspondence between Gramercy and Financial Strategy about Financial Strategy's 2002 and 2003 fees for tax preparation work and discussing details of some returns, including LMCs, (6) a 2004 email from a Financial Strategy employee asking Melinda Gunn (the Texas-licensed CPA) to revise the address and signature line on a LMC tax return, (7) a 2003 email from BDO to Financial Strategy responding to Financial Strategy's questions about reporting of tax shelters and opining that certain IRS disclosure requirements applying to tax shelters do not apply to distressed debt transactions, and (8) a 2005 email from Financial Strategy to Gramercy noting that LMC's foreign partners and income may trigger a withholding obligation.

Finally, plaintiffs proffered an affidavit by plaintiffs' accountant explaining that (1) the Investment Strategies were marketed to plaintiffs as packaged deals, (2) plaintiffs viewed the consulting fees paid to BDO as including tax preparation fees for entities necessary to the Investment Strategies, including LMC, (3) plaintiffs did not solicit Financial Strategy to do work for LMC, (4) BDO made the decision, for strategic reasons, to change LMC's domicile to Texas after 2002, (5) for 2003-2008, a majority of LMC's owners (by numbers and percentage) were Texas residents, (6) although schedule K-1s were usually delivered to plaintiffs in Texas by BDO or Gramercy, on one or more occasions, Financial Strategy sent Schedule

13

K-1s directly to plaintiffs in Texas, and (7) Gramercy paid Financial Strategy for preparing LMC's tax returns, but the expenses was charged to LMC and, thus, the cost was born by the partners.

In response to plaintiffs' objections to the original Shaul Affidavit, the court signed an order permitting Financial Strategy to "submit an amended affidavit regarding its special appearance which deletes one or more of the statements contained in the Affidavit of Mr. Andrew Shaul which was previously filed with Financial Strategy's Special Appearance, provided that no other revisions or additions to such affidavit may be made." Financial Strategy filed a second Shaul Affidavit, which verified its special appearance and made numerous additions and revisions. On plaintiffs' motion, the trial court struck this second Shaul affidavit, but stated again that Financial Strategy could file an amended affidavit verifying its special appearance motion and otherwise complying with the court's previous order permitting deletions but no other revisions or additions.

At a hearing on the special appearance, plaintiffs focused on Shaul's credibility, pointing out discrepancies between the initial Shaul affidavit and Shaul's later deposition testimony. After the hearing, Financial Strategy filed a third Shaul affidavit that largely mirrored his first,[4] but included a verification of

---

[4] The only difference in the factual recitations of the first and third Shaul affidavit was the deletion, in the third affidavit, of a statement that Financial Strategy had never had a Texas client.

14

the Financial Strategy's special appearance motion. Plaintiffs' moved to strike the new affidavit, and the trial court denied Financial Strategy's special appearance without ruling on the motion to strike. Neither party requested findings of fact or conclusions of law. Financial Strategy timely brought this interlocutory appeal.

## ISSUE ON APPEAL

In a single issue, Financial Strategy argues that the trial court erred by denying its special appearance.

## STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790–91 (Tex. 2005); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Because the trial court's exercise of personal jurisdiction over a nonresident defendant is one of law, an appellate court reviews the trial court's determination of a special appearance de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software*, 83 S.W.3d at 794. However, the trial court must frequently resolve fact questions before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794; *Capital Tech. Info. Servs., Inc. v. Arias & Arias, Consultores*, 270 S.W.3d 741, 748 (Tex. App.—Dallas 2008, pet. denied) (en banc). In a special appearance, the trial court is the sole judge of the witnesses' credibility and the weight to be given their

15

testimony. *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 926 (Tex. App.—Austin 2010, no pet.). We do not "disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." *Ennis v. Loiseau*, 164 S.W.3d 698, 706 (Tex. App.—Austin 2005, no pet.). When a trial court does not issue findings of fact or conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. We will affirm the trial court's ruling on any legal theory that finds support in the record. *Dukatt v. Dukatt*, 355 S.W.3d 231, 237 (Tex. App.—Dallas 2011, pet. denied).

## PERSONAL JURISDICTION

The Texas long-arm statute permits Texas courts to exercise jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (Vernon 2008); *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007); *BMC Software*, 83 S.W.3d at 795. The Texas long-arm statute extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *PHC–Minden*, 235 S.W.3d at 166 (quoting *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)).

The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state to assert personal jurisdiction over a nonresident defendant. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 108,

16

107 S. Ct. 1026, 1030 (1987); *Helicopteros Nacionales de Colombia., S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868, 1872 (1984). Under the Due Process Clause, personal jurisdiction over a nonresident defendant is constitutional when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 2184 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945). Minimum contacts are sufficient to support the exercise of personal jurisdiction if they show that the nonresident defendant has "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. See *Int'l Shoe Co.*, 326 U.S. at 319, 66 S.Ct. at 160; *Michiana*, 168 S.W.3d at 784.

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Moki Mac*, 221 S.W.3d at 574. The nonresident defendant then has the burden of negating all bases of jurisdiction alleged in the plaintiff's petition. *Kelly*, 301 S.W.3d at 657–58; *Moki Mac*, 221 S.W.3d at 574. The defendant can introduce evidence disproving the plaintiff's factual allegations, or show that the defendant's contacts with the forum state "fall short of purposeful availment," or demonstrate that

17

"traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc). If specific jurisdiction is at issue, then the defendant also can show that the plaintiff's claims do not arise from the defendant's contacts with Texas. *Id.*

## PARTIES' ARGUMENTS

Financial Strategy contends that the trial court's exercise of specific personal jurisdiction over it was improper, as it lacked sufficient minimum contacts with Texas. According to Financial Strategy, it was Gramercy who steered plaintiffs to the other defendants—including Financial Strategy—for legal, financial, investment and tax advice and other products related to the Investment Strategies. Because Financial Strategy "did not purposefully target, recruit or in any other way promote its services" to the Texas plaintiffs, Financial Strategy contends that its connection with Texas is too attenuated to suffice as minimum contacts. Moreover, Financial Strategy insists, plaintiffs' claims do not arise from any connection Financial Strategy has to Texas because it was Gramercy, a non-Texas entity, that hired Financial Strategy to prepare LMC's tax return and the plaintiffs' K-1s. Alternatively, Financial Strategy contends that subjecting it to personal jurisdiction in Texas offends traditional notions of fair play and substantial justice because it would be burdensome for Financial Strategy to defend itself in Texas,

18

where is has no offices, representatives, employees, or agents. In support, Financial Strategy points out that it has only twelve employees, "all of whom contribute significantly to the overall productivity" of Financial Strategy and whose absence would "significantly reduce time available to serve the firm's clients."

Plaintiffs respond with three reasons the trial court did not err in denying Financial Strategy's special appearance, i.e., (1) Financial Strategy failed to meet its burden to negate all bases of jurisdiction because the only evidence offered—the Shaul affidavits—were sham affidavits that the trial court was not required to consider, (2) plaintiffs presented legally and factually sufficient evidence to support the trial court's ruling, and (3) Financial Strategy failed to verify the special appearance.

## ANALYSIS

The parties do not dispute that plaintiffs pleaded sufficient jurisdictional facts with regard to Financial Strategy to invoke the long Texas long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE § 17.042. Thus, the question presented is whether Financial Strategy negated each pleaded basis for jurisdiction.

Although our review is de novo, we must defer to the trial court's resolution of fact questions. *BMC Software*, 83 S.W.3d at 794. Here, because the trial court did not make express findings in support of its denial of Financial Strategy's

19

special appearance, we imply all facts necessary to support the judgment that are supported by the evidence. *Id.* The trial court had evidence on the jurisdictional question in the form of the Shaul affidavit,[5] the evidence attached to plaintiffs' response to Financial Strategy's special appearance, and excerpts of the Shaul deposition played at the special appearance hearing.

## A. Plaintiffs' challenges to the Shaul affidavit

As a threshold matter, we must address plaintiffs' argument that much, if not all, of Shaul's affidavit must be disregarded as a sham and as improperly containing legal conclusions. Plaintiffs also contend that Financial Strategy failed to properly verify its special appearance motion.

### 1. Sham affidavit

Plaintiffs point to the following alleged discrepancies between Shaul's affidavit and excerpts of Shaul's deposition testimony the court heard at the hearing.

> -In Shaul's affidavit, he states that "None of Financial Strategy's CPAs are licensed to practice in Texas nor do any such CPAs practice in Texas." During his deposition, however, Shaul acknowledged that Melinda Gunn, who worked for Financial Strategy in Tennessee until 2005 and who performed work on LMC Recovery Fund's tax return, holds a Texas CPA license.

---

[5] Unless noted otherwise, references to the Shaul affidavit are to the third Shaul affidavit—the last one filed.

20

-In Shaul's affidavit, he states that the "tax returns at issue in this lawsuit concern LMC Recovery Fund, a Delaware Limited Liability Company with its principal place of business in Greenwich, Connecticut." In Shaul's deposition, however, he acknowledged that—in 2003 and subsequent years—the address on LMC's return changed from a Connecticut address to a Texas address, which could indicate that its primary place of business is Texas.

-In Shaul's affidavit, he states that "[n]one of the tax returns at issue were sent by [Financial Strategy] to anyone in Texas." During his deposition, Shaul agreed that he "do[es]n't actually know for sure that Mr. Burford or someone else didn't send copies or even originals of the tax returns to the Texans."

A "sham affidavit" generally refers to an affidavit that contradicts early deposition testimony, without any explanation for the change in testimony, for the purpose of creating a fact issue to defeat summary judgment. *Farroux v. Denny's Rests., Inc.*, 962 S.W.2d 108, 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Assuming that the sham affidavit doctrine is applicable in the context and posture presented here, we conclude that these three alleged "contradictions" do not render Shaul's affidavit a sham affidavit. The second and third topics—i.e. Shaul's belief about LMC's primary place of business and whether copy of a tax return was sent to someone in Texas—do not represent contradictions, as Shaul's deposition testimony only establishes that he is not sure about either. *Id.* at 111 n.1 (affidavit is not a sham if inconsistency is caused by witnesses' confusion, or if witness discovers additional, relevant information after deposition).

21

With regard to the first topic—i.e., whether Financial Strategy employs CPAs that hold Texas licenses—the record contains an explanation for that discrepancy. Gunn, the Texas-licensed CPA, no longer worked for Financial Strategy at the time Shaul's affidavit was made, and there was some confusion about which Financial Strategy division or related company she had been employed by. *E.g., Naples v. Lesher*, No. 06-13-00059-CV, 2014 WL 1856846, at *5 n.8 (Tex. App.—Texarkana May 8, 2014, no pet.) (mem. op.) (rejecting application of sham affidavit doctrine because affidavit did not directly conflict with deposition testimony, and contradiction between affidavit and earlier correspondence was explained).

As the San Antonio Court of appeals has noted, "[m]ost differences between a witness's affidavit and deposition are more a matter of degree and details than direct contradiction," and this "reflects human inaccuracy more than fraud." *Cantu v. Peacher*, 53 S.W.3d 5, 10 (Tex. App.—San Antonio 2001, pet. denied). Thus, if an affidavit is generally consistent with prior testimony, but details differ, inconsistencies create opportunity for impeachment, not vitiating the affidavit. *Id*.

Each of these three alleged inconsistencies was pointed out to the trial court at the special appearance hearing, and the court did not strike the affidavit. While we assume the trial court resolved credibility determinations in plaintiffs' favor, we reject the argument that inconsistencies in Shaul's testimony require that his

affidavit be disregarded in its entirety. *E.g., Youngblood v. U.S. Silica Co.*, 130 S.W.3d 461, 470 (Tex. App.—Texarkana 2004, pet. denied) (subtle inconsistencies or conflicts between deposition testimony and affidavit do not justify disregarding affidavit; such differences can be resolved by factfinder).

## 2. Conclusory

Plaintiffs also contend that the Shaul affidavit contains the following legal conclusions, which they argue should not be considered evidence,

- FSG has not committed any tort in Texas
- FSG is . . . not required to maintain a registered agent for service in Texas
- FSG does not do business in Texas
- FSG never entered into any contract with Plaintiffs or anyone else located in Texas
- FSG's claims do not arise from and are not related to any activity conducted with Texas arising from any action or conduct of FSG purposefully directed toward Texas
- FSG has never had continuous or systematic contacts with Texas necessary for the Court to assert jurisdiction over it
- . . . FSG has not purposefully availed itself of the benefits or protections of the laws of the great State of Texas

We agree. An affiant's legal conclusions lack probative value, and to the extent Shaul's affidavit contains legal conclusions, we will not credit those conclusions in reviewing the trial court's denial of Financial Strategy's special appearance. *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 250 n.8 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (affiant's testimony that he "committed no

23

torts in Texas is a legal conclusion without any probative force" in special appearance proceeding).

### 3. Verification

Financial Strategy's special appearance was not verified. Shaul's third affidavit filed in support of the special appearance, however, contains a verification of the facts in both the motion and the affidavit. Plaintiffs' acknowledge this, but argue that we should not allow Financial Strategy to verify its special appearance with a "sham affidavit." They argue that this is an "alternative, and unchallenged, ground" that the trial court's order can be "summarily affirmed." We have rejected the argument that Shaul's affidavit is a sham affidavit, and hold that Shaul's affidavit sufficed to verify Financial Strategy's special appearance. *Cf. IGuide Tours, LLC*, 406 S.W.3d at 730–31 (affidavit in support of special appearance that did not expressly verify facts in special appearance was sufficient because affidavit contained same jurisdictional facts as special appearance).

### B. Evidence to consider

Plaintiffs no longer contend that Texas can exercise general jurisdiction over Financial Strategy. Disregarding conclusory evidence and implying "all facts necessary to support the judgment and supported by the evidence," *BMC Software*, 83 S.W.3d at 795, the record presents us with the following facts relevant to the issue of specific jurisdiction:

- In 2000, BDO marketed certain Investment Strategies to Plaintiffs, who in turn hired BDO and Gramercy to implement the strategies.

- LMC was Delaware LLC formed in 2000 for use implementing the plaintiffs' Investment Strategies. Through this implementation, the Texas-resident plaintiffs acquired ownership interests in LMC. BDO prepared LMC's tax returns in 2000 and 2001.

- Financial Strategy is a Tennessee LLC hired by nonresident Gramercy beginning in 2002 to prepare LMC tax returns and the corresponding Schedule K-1s. The 2002 LMC tax return prepared by Financial Strategy listed a Connecticut address for LMC, and a nonresident Gramercy affiliate as the tax matters partner for the IRS to contact in case of questions. The plaintiffs' 2002 Schedule K-1s listed their Texas addresses.

- In 2003, LMC's address changed to a Texas address, and its tax matters partner was changed to a Texas resident. The plaintiffs' Schedule K-1s listed their Texas addresses.

- Plaintiffs' claims against Financial Strategy involve only its preparation of LMC's 2002 and 2003 tax returns.

- Financial Strategy prepared LMC's tax returns and corresponding K-1s in Tennessee. Financial Strategy has a former employee who worked in Tennessee but who held a Texas CPA license who may have worked on LMC tax returns and K-1s.

- Financial Strategy's usual practice was to provide LMC's tax returns and K-1s to Gramercy in Connecticut for filing and distribution to plaintiffs and other partners, but these materials may have been sent by Financial Strategy directly to a plaintiff in Texas at least once.

- Financial Strategy was paid by Gramercy for preparing LMC's tax returns and K-1s.

- Litigation in Texas would be burdensome for Financial Strategy, as it has no representative, employees or agents in Texas.

**C. Financial Strategy's contacts are not sufficient to confer jurisdiction.**

To determine if the trial court properly exercised personal jurisdiction over Financial Strategy, we must assess these contacts to determine if Financial Strategy purposefully availed itself of the privilege of conducting activities in Texas. This "purposeful availment" inquiry is a three-pronged test. *Moki Mac*, 221 S.W.3d at 575. First, only the defendant's contacts with the forum are relevant. *Id*. Second, the contacts on which jurisdiction depends must be purposeful, rather than random, fortuitous, or attenuated. *Id*. Third, "the 'defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction.'" *Id*. (quoting *Michiana*, 168 S.W.3d at 785); *Motor Components, LLC v. Devon Energy Corp*., 338 S.W.3d 198, 201–02 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We agree with Financial Strategy that its contacts with Texas fall short of what is required to justify exercise of jurisdiction.

The crux of plaintiffs' claims is that they were sold Investment Strategies that utilized improper tax shelters, and that plaintiffs were damaged by the hefty professional fees, taxes, and penalties. Although Financial Strategy later started preparing tax returns for an entity necessary to carrying out the Investment Strategies, i.e., LMC, it is undisputed that Financial Strategy was not initially involved in developing, marketing, or implementing the strategies.

The record reflects that—after the Investment Strategies were in place and had been implemented—a friend of Shaul's who was a partner in BDO's office in Tennessee, approached Shaul in Tennessee to ask whether Financial Strategy had capacity to prepare some partnership returns that BDO was no longer interested in preparing. When Shaul expressed interest, the BDO partner introduced Shaul to Gramercy. Gramercy eventually hired Financial Strategy to prepare tax returns for several partnerships, including LMC. Gramercy is not a Texas resident, Financial Strategy is not a Texas resident and—at the time Financial Strategy was engaged by Gramercy—LMC was a Delaware company with a Connecticut address.

Plaintiffs, however, emphasize that Financial Strategy knew that Texas-resident plaintiffs would receive and use the LMC tax return documents prepared by Financial Strategy in preparing their individual tax returns. But "that a defendant might have foreseen or knows the brunt of the injury will be felt by a particular resident in a forum state is not enough to establish minimum contacts." *Asshauer v. Glimcher Realty Trust*, 228 S.W.3d 922, 933 (Tex. App.—Dallas 2007, no pet.) (citing *Michiana*, 168 S.W.3d at 788–89). To establish minimum contacts, a "defendant's contacts much be *purposeful* rather than fortuitous." *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 869 (Tex. App.—Austin 2008, no pet.).

In 2003, the second of the two relevant years that Financial Strategy prepared LMC's tax returns, BDO advised plaintiffs to change LMC's place of

business from Connecticut to Texas and to designate a Texas-resident tax matters partner. Accordingly, plaintiffs argue, there can be no doubt at that point that Financial Strategy "knew it was doing work for the benefit of a Texas resident." LMC's address change, however, was the result of unilateral actions by third parties, i.e., BDO and plaintiffs. Such independent acts cannot create the minimum contacts necessary to demonstrate that Financial Strategy purposefully created additional contacts with Texas. *Michiana*, 168 S.W.3d at 785 n.28 (citing *Burger King*, 417 US at 475 (purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person")).

Also lacking here is a showing that Financial Strategy sought some "benefit advantage, or profit by availing itself of the jurisdiction." *GJP, Inc.*, 251 S.W.3d at 869. Financial Strategy was paid by Gramercy for preparation of LMC's tax returns and Schedule K-1s. Although plaintiffs proffered evidence that they considered the consulting fees they paid to BDO to include the cost of preparing all relevant tax returns for entities needed to implement the Investment Strategies, "the bare fact that a defendant receives some benefit, advantage, or profit from Texas does not necessarily mean that it has purposefully availed itself of the state." *GJP*, 251 S.W.3d at 869; *see also Michiana*, 168 S.W.3d at 788 ("[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will

28

not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State."). Here, the fact that Financial Strategy was paid fees by a non-Texas entity to prepare tax return documents that would be used, in part, by Texas residents is not enough to demonstrate that Financial Strategy sought a "benefit, advantage, or profit *by availing itself of the jurisdiction.*" *GJP, Inc.*, 251 S.W.3d at 869 (emphasis added).

In *Michiana*—a case holding that Texas courts lacked personal jurisdiction over a nonresident corporation that sold an RV to a Texas resident over the phone—the supreme court noted that a nonresident corporation "[c]ertainly ought to be subject to suit in any jurisdiction where it 'enjoys the benefits and protection of the laws of that state." 168 S.W.3d at 787; *see also Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 158 (Tex. 2013) (holding defendant that "attended two Texas meetings with a Texas corporation and accepted alleged trade secrets created in Texas regarding a potential joint venture in Texas with the Texas corporation . . . sought out Texas and the benefits and protections of its laws" for purpose of establishing personal jurisdiction). But in this case, as in *Michiana*, it is "hard to imagine what possible benefits and protections [Financial Strategy] enjoyed from Texas law." 168 S.W.3d at 787. "Indeed, it is hard to imagine how [Financial Strategy] would have conducted its activities any differently if Texas had no law at all." *Id*.

29

We likewise find the other contacts relied upon by Plaintiffs to be too attenuated. The record reflects that Financial Strategy employed a CPA in Tennessee that lived and worked in Tennessee, but who held a Texas CPA license and may have worked on LMC's tax return. Plaintiffs cite no authority, and we have not located any, holding that that employing a Texas CPA in another state demonstrates minimum contacts with Texas absent evidence of that employee performing work in Texas. Likewise, we decline to hold that the Financial Strategy potentially mailing a tax return or Schedule K-1s to plaintiffs in Texas (as directed by a Gramercy, Financial Strategy's non-Texas client) is a purposeful, rather than random, fortuitous, or attenuated contact with Texas. *See Moki Mac River Expeditions*, 221 S.W.3d at 575. This is especially true given that there is no evidence indicating when these tax documents were mailed, and if they even relate to the 2002 or 2003 tax years that are relevant to plaintiffs' claim against Financial Strategy. *See id.* at 585 ("[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.").

We thus conclude that the trial court erred in concluding that Financial Strategy had sufficient minimum contacts with Texas to confer Texas courts with personal jurisdiction over it.

## CONCLUSION

We reverse the trial court's order denying Financial Strategy Group PLC's special appearance and render judgment granting the special appearance and dismissing claims against Financial Strategy Group, PLC.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

**APPENDIX C**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| Douglas Coe, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 12 L 13691 |
| | ) | |
| BDO Seidman, et.al.; | ) | Commercial Calendar T |
| | ) | |
| Defendants. | ) | Judge John C. Griffin |
| | ) | |
| | ) | |
| | ) | |

## OPINION

This cause is before the Court on Defendants Gramercy Advisors, L.L.C. ("Gramercy Advisors"), Gramercy Financial Services, LLC ("GFS"), Gramercy Capital Recovery Fund, LLC ("GCRF"), Gramercy Emerging Markets, LLC ("GEM"), and KSHER AA, LLC's ("KSHER," and collectively with Gramercy Advisors, GFS, GCRF, and GEM, "Gramercy" or Gramercy Defendants"), and Defendant Marc Hélie's ("Hélie") motions to dismiss Plaintiffs Douglas Coe ("Coe"), Jacqueline Coe, GFLIRB, LLC, ALAKE, LLC, and DBIICHA, LLC's (collectively "Plaintiffs" or "the Coes") complaint pursuant to section 2-301 of the Illinois Code of Civil Procedure.

## I.    BACKGROUND

The following is a brief summary of the facts contained in Plaintiffs' first amended complaint. Plaintiffs allege that BDO Seidman, LLP ("BDO"), multiple BDO employees, Gramercy, Hélie and other participants (all collectively "Defendants") defrauded Plaintiffs through the design, marketing, sale, and implementation of tax-reducing investment strategies that Defendants allegedly knew the Internal Revenue Service ("IRS") would disallow as illegal and classify as an abusive tax shelter ("the "Distressed Debt Strategy"). Thereafter, Plaintiffs filed their first amended complaint against Gramercy and other defendants, including Hélie. Gramercy and Hélie both bring motions to dismiss Plaintiffs' first amended complaint for lack of personal jurisdiction.

## II.  GRAMERCY'S MOTION TO DISMISS

Gramercy contends that it is not subject to personal jurisdiction in Illinois and that Plaintiffs' first amended complaint should be dismissed pursuant to section 2-301. *See* 735 ILCS 5/2-301 ("[A] party may object to the court's jurisdiction . . . on the ground that the party is not amenable to process of a court of this State . . .").

Illinois Courts analyze a nonresident defendant's forum contacts within the framework of two recognized forms of personal jurisdiction: general and specific jurisdiction. *See Bolger v. Nautica Int'l, Inc.*, 369 Ill. App. 3d 947, 951-52 (2nd Dist. 2007). Thus, the Court must initially determine whether Gramercy is subject to general jurisdiction.

### A. GENERAL JURISDICTION

The United States Supreme Court held in *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014), that a corporate defendant ordinarily may be subject to general jurisdiction only in its state of incorporation or the state of its principal place of business. (finding that it is insufficient that the defendant "engages in a substantial continuous, and systematic course of business" in a forum state); (*Id.* at 761 n. 19) (finding that for general jurisdiction to apply the course of business must be "so substantial and of such a nature as to render the corporation at home in the state.").

In their response, Plaintiffs do not contend that Gramercy is subject to general jurisdiction. *Morecambe Mar., Inc. v. Nat'l Bank of Greece, S.A.*, 354 Ill. App. 3d 707, 710 (1st Dist. 2004) (finding that it is well-established that the plaintiff bears the burden of establishing a valid basis for asserting jurisdiction over the defendant). Further, Gramercy is not incorporated in Illinois nor has its principal place of business in Illinois. Therefore, Gramercy is not subject to general jurisdiction.

### B. SPECIFIC JURISDICTION

The Illinois long-arm statute authorizes Illinois courts to exercise specific jurisdiction over nonresident defendants. 735 ILCS 5/2-209. Under the Illinois long-arm statute, an individual is subject to specific jurisdiction, whether or not they are a citizen or resident of Illinois, if the defendant performs any contract or promise that is substantially connected with the State of Illinois. 735 ILCS 5/2-209(a)(7). In addition, the Illinois long-arm statute includes a "catch all" provision whereby a court may exercise jurisdiction over a person on any basis permitted by the Illinois Constitution and the United States Constitution. 735 ILCS 5/209(c).

Three criteria are considered in determining whether specific jurisdiction exists under the catch-all provision: "whether (1) the nonresident defendant had 'minimum contacts' with [the forum] such that he had 'fair warning' that he may be required to defend himself there; (2) the action arose out of or relates to the defendants' contacts with [the forum]; and (3) it is reasonable to require the defendants to litigate in [the forum state]." *Morgan, Lewis & Bockius LLP v. City of E. Chi.*, 401 Ill. App. 3d 947, 954 (1st Dist. 2010); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("Under federal due process standards, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has had sufficient "minimum contacts" with the forum state such that maintenance of the suit in the forum does not offend "traditional notions of fair play and substantial justice."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ("fair warning. . . gives a degree of predictability . . [and] . . . allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (internal quotations omitted).

a. Minimum Contacts

The first step of the specific jurisdiction analysis requires that the nonresident defendant have minimum contacts and fair warning within the forum. *See Morgan, Lewis & Bockius LLP*, 401 Ill. App. 3d at 954. The requirements of minimum contacts and fair warning are satisfied if "the defendant has (1) purposefully directed his activities at Illinois residents, (2) reached out beyond one state to create continuing relationships with citizens of another state, or (3) purposefully derived benefits from his interstate activities." *Kalata v. Healy*, 312 Ill. App. 3d 761, 769 (1st Dist. 2000).

Gramercy maintains that it does not have the minimum contacts or fair warning within Illinois. Gramercy includes the supporting affidavit of Robert Lanava ("Lanava"), the chief compliance officer and head of operations of Gramercy. The affidavit includes the following facts: that Plaintiffs (Georgia, Delaware, and Connecticut) and Gramercy Defendants (Connecticut and Delaware) reside outside of Illinois; that Plaintiffs and Gramercy never met in Illinois; that no communications between the parties was sent to or from Illinois; that all transactions concerning Plaintiffs in which the Gramercy Defendants were involved took place in Connecticut, New York, or outside the United States; and that none of Gramercy's officers, directors, employees or agents ever traveled to or conducted business in Illinois.

In response, Plaintiffs argue that Gramercy purposefully directed its activities at Illinois by engaging with BDO, an Illinois-headquartered company, to develop and promote the Distressed Debt Strategy to the Coes.

In reply, Gramercy argues that Plaintiffs' affidavits fail to offer any specific or credible facts to rebut the supporting affidavit of Lanava.

## 1. Competing Affidavits

When a court is faced with competing affidavits submitted on a motion challenging personal jurisdiction, "conflicts will be resolved in favor of the plaintiff for the purpose of establishing whether a prima facie case for personal jurisdiction has been shown." *Keller v. Henderson*, 359 Ill. App. 3d 605, 611 (2nd Dist. 2005). However, in order to establish a genuine conflict, Plaintiffs must come forward with credible evidence specifically countering the facts alleged in Gramercy's affidavit. *See Kutner v. DeMassa*, 96 ll. App. 3d 243, 248 (1st Dist. 1981) (taking the defendant's affidavit to be true where the plaintiff's counter-affidavit failed to rebut statements that defendant did not have an agency relationship with other parties and was not part of any alleged conspiracy).

Here the Court notes that Plaintiffs' affidavits do not specifically rebut the facts contained in the Lanava's affidavit, nor do Plaintiffs' affidavits make substantive statements regarding jurisdiction in Illinois (*see* Section III. A, *supra*).

Thus, for purposes of adjudicating this motion, the unrebutted statements in the affidavit of Lanava must be taken as true. *See Kutner*, 96 ll. App. 3d at 248. Even assuming Plaintiffs raised a genuine conflict within the affidavits and all conflicts are resolved in their favor, the Court finds that Plaintiffs fail to show that Gramercy has the necessary minimum contacts and 'fair warning' in Illinois.

## 2. Illinois-Based Counsel

Plaintiffs contend that Gramercy utilized Illinois based-counsel, Richard Lipton, ("Lipton"), an attorney in the Chicago office of McDermott Will & Emery ("MWE"), to help prepare the documents and opinions necessary to market and implement the Distressed Debt Strategy. However, even if Gramercy hired an Illinois lawyer, the Supreme Court held in *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014), that a "minimum contacts analysis looks to the forum itself, not the defendant's contacts with persons who reside there." Here Plaintiffs draw only a possible connection with Lipton, an Illinois resident, but they fall short of establishing a connection between Gramercy and the forum itself. Thus, the Court

finds that Plaintiffs' argument regarding Lipton does not establish that Gramercy had minimum contacts with Illinois.

### 3. Illinois-Based Bank and Wire Transfer

Plaintiffs argue that Gramercy routed wire transfers regarding client investments in the Distressed Debt Strategy through a bank in Illinois. However, the record shows that Gramercy had an account with Citibank in New York and that Citibank used First Chicago Bank as a correspondent bank to facilitate the interstate transfer of funds. Thus, the Court finds that this connection is far too distant to establish that Gramercy had minimum contacts with Illinois.

### 4. Invoices and Fees with BDO

Plaintiffs maintain that Gramercy sent invoices to BDO's offices in Illinois and that this creates a connection between Gramercy and the forum. The Court finds that BDO's decision to process invoices in Illinois is not attributable to Gramercy under a minimum contacts analysis. Rather, the fees in question were remitted to Gramercy by clients located throughout the country and merely routed through Illinois by BDO for administrative purposes. Therefore, Gramercy did not establish minimum contacts by sending invoices and fees to BDO

### 5. Communications with Illinois

Plaintiffs argue that Gramercy had numerous communications directed at Illinois. However, the record shows that many of the cited communications do not show Gramercy directing its activities "to the forum itself". *See Walden*, 134 S. Ct. at 1122. The Court also notes that when as here a "contract is neither negotiated nor performed in the forum state, communications . . . into the forum state, standing alone, are insufficient to establish specific jurisdiction over a nonresident defendant." *CF Indus. v. Ben-Trei, Ltd.*, 09 C 1353, 2009 WL 2765972 at *3 (N.D. Ill. Aug. 27, 2009). Therefore, Gramercy does not establish minimum contacts by sending communicating with BDO

Finally, the Court notes that Gramercy did not have 'fair warning' as both Plaintiffs and Gramercy Defendants reside outside of Illinois and none of the alleged transactions in which the Gramercy Defendants were involved, concerning Plaintiffs, took place in Illinois.

Therefore, the Court finds that Gramercy does not have the necessary minimum contacts with Illinois arising from its relationship with Plaintiffs such that it had fair warning that it may be required to defend itself in Illinois.

### b. Arising Out of Forum

The second part of the specific jurisdiction analysis requires that an action arise out of or relate to Gramercy's forum contacts. *Viktron Ltd. Partnership v. Program Data, Inc.*, 326 Ill. App. 3d 111, 121 (1st Dist. 2001). Gramercy argues that Plaintiffs' claims do not directly or indirectly arise out of Gramercy's forum contacts with Illinois. Likewise, Gramercy contends that it never had an agency relationship with BDO or any non-Gramercy Defendant.

In response, Plaintiffs contend that their cause of action arises from the Distressed Debt Strategy that Gramercy allegedly developed and marketed through its contacts with BDO and Lipton in Illinois.

The Court finds that Plaintiffs' claims do not directly arise out of Gramercy's limited communications with residents of Illinois. First, whether or not BDO or non-Gramercy defendants are subject to the Court's jurisdiction is irrelevant to the Gramercy Defendants, as jurisdiction must be independently assessed for each defendant. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Specific jurisdiction must arise from a defendant's forum contacts, not the contacts of a third-party. *See Walden*, 134 S. Ct. 1115 (2014) ("[T]he relationship must arise out of contacts that the defendant himself creates with the forum state."). Here Plaintiffs do not establish Gramercy's forum contacts. Instead, they only provide a limited connection to Illinois through the non-Gramercy defendants.

Second, Illinois Courts have held that a plaintiff's cause of action must arise directly from the defendant's forum contacts. *See Spartan Motors, Inc. v. Lube Power, Inc., Co.*, 321 Ill. App. 3d 832, 857 (1st Dist. 2001). Here the communications that Plaintiffs cite do not involve substantive discussions of Plaintiffs' investments and fail to show any Gramercy activity directed at the forum.

Therefore, the Court finds that Plaintiffs' claims against Gramercy do not arise out of Illinois.

### c. Reasonable to Require Litigation

The third part of the specific jurisdiction analysis requires that the Court consider whether it is reasonable to require the nonresident defendants to litigate in the forum state. *See Morgan, Lewis & Bockius LLP*, 401 Ill. App. 3d at 954; *see also Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). Under the Illinois Constitution's due process guarantee, "a court may exercise jurisdiction over a defendant only

when it is fair, just and reasonable to require a nonresident defendant to defend an action in Illinois considering the quality and nature of the defendant's acts which occurred in Illinois or which affect interests located in Illinois." The Court considers three relevant factors[1] in determining the reasonableness of requiring the defendant to litigate in Illinois: (1) the burden on the defendant of defending the action in the forum state, (2) the forum state's interest in adjudicating the dispute, and (3) the plaintiff's interest in obtaining effective relief. *Russell v. SNFA,* 2013 IL 113909).

Plaintiffs argue that there is little burden on Gramercy in defending this action in Illinois because it previously retained counsel and used a bank account in Illinois. Plaintiffs further contend that the State of Illinois has an interest in adjudicating the dispute given Gramercy's involvement in the Distressed Debt Strategy. Finally, Plaintiffs maintain that obtaining effective relief is advanced by keeping Gramercy in the instant lawsuit rather than having to institute multiple proceedings in various jurisdictions.

The Court finds that it is not reasonable to require Gramercy to defend this action as maintenance of the instant matter offends the traditional notions of fair play and substantial justice. Plaintiffs have no interest in obtaining effective relief in Illinois as a practically identical case to this one is currently pending in the Southern District of New York. *See Gramercy Advisors, LLC, et al. v. BDO Seidman, LLP, et al.,* Docket No. CV-2013-9069 (VEC) (S.D.N.Y.). Finally, Illinois has no interest in this dispute, as most Gramercy Defendants and Plaintiffs reside elsewhere.

## C. CONCLUSION

Based on the foregoing, Gramercy is not subject to personal jurisdiction in Illinois and its motion to dismiss for lack of personal jurisdiction is GRANTED.

---

[1] Neither party discusses the interests of the other affected forums in the efficient judicial resolution of the dispute and the advancement of substantive social policies.

### III.    HÉLIE'S MOTION TO DISMISS

Defendant Hélie, a former employee of Gramercy, joins in the contemporaneously-filed motion by Gramercy Defendants to dismiss this action for lack of personal jurisdiction and adopts all arguments therein which are applicable to him.

### A. GENERAL JURISDICTION

Plaintiffs do not attempt to allege that Hélie is subject to general jurisdiction. (*see* Section II. A, *infra*.). Further, Hélie resides in New York and he does not have the type of pervasive in-state contacts warranting this Court to exercise general jurisdiction over a nonresident defendant. Therefore, Hélie is not subject to general jurisdiction.

### B. SPECIFIC JURISDICTION

The Court considers whether the three criteria for specific jurisdiction are met. *See Morgan, Lewis & Bockius LLP*, 401 Ill. App. 3d at 954. Plaintiffs plead in their complaint that Hélie "has done and is doing business in Illinois" and "that he has committed torts in Illinois."

Hélie contends that these allegations represent bare legal conclusions "which do no more than parrot statutory provisions for long-arm jurisdiction." Hélie further argues that there are no facts pled in the complaint demonstrating any nexus between Plaintiffs' causes of action, Hélie, and Illinois.

The Court finds that Hélie is not subject to specific jurisdiction in Illinois. First, Plaintiffs do not present credible evidence specifically countering the facts alleged in Hélie's affidavit. *See Kutner*, 96 ll. App. 3d at 248.
Thus, for purposes of adjudicating this motion, the unrebutted statements in the affidavit of Hélie must be taken as true. *See Kutner*, 96 ll. App. 3d at 248.

These unrebutted statements show that Hélie is a New York resident and is not domiciled in Illinois; Plaintiffs are Georgia residents; Plaintiffs and Hélie never met in Illinois and never communicated to or from Illinois; none of the transactions underlying the parties' investments took place in Illinois; and the relevant contracts were drafted, performed, and executed outside of Illinois.

Second, these unrebutted facts show that Hélie does not have the necessary minimum contacts with Illinois to be subject to specific jurisdiction. The Court is also unconvinced by Plaintiffs' arguments that Hélie's communications, and his various connections with Gramercy, somehow create these minimum contacts with Illinois or provide him with 'fair warning.'

Third, Illinois Courts have held that a plaintiff's cause of action must arise directly from the defendant's forum contacts. *See Spartan Motors, Inc. v. Lube Power, Inc., Co.*, 321 Ill. App. 3d 832, 857 (1st Dist. 2001). Here Plaintiffs' claim against Hélie does not directly arise from the three communications that Plaintiffs cite as these communications fail to show any activity by Hélie directed at the forum.

Finally, the Court finds that it is not reasonable for Hélie to defend this action in Illinois. (*see* Section II. B. c., infra).

## C. CONCLUSION

Therefore, Hélie is not subject to personal jurisdiction in Illinois and his motion to dismiss for lack of personal jurisdiction is **GRANTED**.

## IV. ORDER

For the reasons stated, it is hereby **ORDERED**:

(1) Defendant Gramercy's and Hélie's motions to dismiss, for lack of personal jurisdiction is **GRANTED**;

(2) Plaintiffs' claims are dismissed with prejudice as to Defendant Gramercy and Hélie;

(3) This case is continued for a case management date of December 8, 2014, at 9:00 a.m. without further notice.

ENTERED

**ENTERED**
JUDGE JOHN C. GRIFFIN-1981

NOV 26 2014

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge John C. Griffin, No. 1981

**APPENDIX D**

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## COUNTY DEPARTMENT, LAW DIVISION

Alan J. Kaufman, Sue E. Kaufman, Lfenet LLC, Bbrook, LLC, and Dralli, LLC,

     Plaintiffs,

v.

BDO Seidman L.L.P., *et. al.*,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 12 L 13292

Commercial Calendar T

Judge John C. Griffin

## OPINION

This cause is before the Court on Defendants Gramercy Advisors, L.L.C. ("Gramercy Advisors"), Gramercy Asset Management, LLC ("GAM"), Tall Ships Capital Management, LLC ("Tall Ships"), Steamboat Capital Management, LLC ("Steamboat"), (collectively "Gramercy" or "Gramercy Defendants"), and Robert Koenigsberger's (for purposes of this motion collectively included with "Gramercy" or "Gramercy Defendants" otherwise referred to individually as "Koenigsberger"), and Defendant Marc Hélie's ("Hélie") motions to dismiss Plaintiffs Alan J. Kaufman, Sue E. Kaufman, Lfenet LLC, Bbrook, LLC, and Dralli, LLC's (collectively "Plaintiffs" or "the Kaufmans") second amended complaint pursuant to section 2-301 of the Illinois Code of Civil Procedure.

## I.    BACKGROUND

The following is a brief summary of the facts contained in Plaintiffs' first amended complaint. Plaintiffs allege that BDO Seidman, LLP ("BDO"), multiple BDO employees, Gramercy, Hélie and other participants (all collectively "Defendants") defrauded Plaintiffs through the design, marketing, sale, and implementation of tax-reducing investment strategies that Defendants allegedly knew the Internal Revenue Service ("IRS") would disallow as illegal and classify as an abusive tax shelter ("the "Distressed Debt Strategy"). Thereafter, Plaintiffs filed their second amended complaint against Gramercy and other defendants, including

Hélie. Gramercy and Hélie both bring motions to dismiss Plaintiffs' second amended complaint for lack of personal jurisdiction.

## II.    GRAMERCY'S MOTION TO DISMISS

Gramercy contends that it is not subject to personal jurisdiction in Illinois and that Plaintiffs' first amended complaint should be dismissed pursuant to section 2-301. *See* 735 ILCS 5/2-301 ("[A] party may object to the court's jurisdiction . . . on the ground that the party is not amenable to process of a court of this State . . .").

Illinois Courts analyze a nonresident defendant's forum contacts within the framework of two recognized forms of personal jurisdiction: general and specific jurisdiction. *See Bolger v. Nautica Int'l, Inc.*, 369 Ill. App. 3d 947, 951-52 (2nd Dist. 2007). Thus, the Court must initially determine whether Gramercy is subject to general jurisdiction.

### A. GENERAL JURISDICTION

The United States Supreme Court held in *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014), that a corporate defendant ordinarily may be subject to general jurisdiction only in its state of incorporation or the state of its principal place of business. (finding that it is insufficient that the defendant "engages in a substantial continuous, and systematic course of business" in a forum state); (*Id.* at 761 n. 19) (finding that for general jurisdiction to apply the course of business must be "so substantial and of such a nature as to render the corporation at home in the state.").

In their response, Plaintiffs do not contend that Gramercy is subject to general jurisdiction. *Morecambe Mar., Inc. v. Nat'l Bank of Greece, S.A.*, 354 Ill. App. 3d 707, 710 (1st Dist. 2004) (finding that it is well-established that the plaintiff bears the burden of establishing a valid basis for asserting jurisdiction over the defendant). Further, Gramercy is not incorporated in Illinois nor has its principal place of business in Illinois. Therefore, Gramercy is not subject to general jurisdiction.

### B. SPECIFIC JURISDICTION

The Illinois long-arm statute authorizes Illinois courts to exercise specific jurisdiction over nonresident defendants. 735 ILCS 5/2-209. Under the Illinois long-arm statute, an individual is subject to specific jurisdiction, whether or not they are a citizen or resident of Illinois, if the defendant performs any contract or promise that is substantially connected with the State of Illinois. 735 ILCS 5/2-209(a)(7). In

addition, the Illinois long-arm statute includes a "catch all" provision whereby a court may exercise jurisdiction over a person on any basis permitted by the Illinois Constitution and the United States Constitution. 735 ILCS 5/209(c).

Three criteria are considered in determining whether specific jurisdiction exists under the catch-all provision: "whether (1) the nonresident defendant had 'minimum contacts' with [the forum] such that he had 'fair warning' that he may be required to defend himself there; (2) the action arose out of or relates to the defendants' contacts with [the forum]; and (3) it is reasonable to require the defendants to litigate in [the forum state]." *Morgan, Lewis & Bockius LLP v. City of E. Chi.*, 401 Ill. App. 3d 947, 954 (1st Dist. 2010); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("Under federal due process standards, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has had sufficient "minimum contacts" with the forum state such that maintenance of the suit in the forum does not offend "traditional notions of fair play and substantial justice."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ("fair warning. . . gives a degree of predictability . . [and] . . . allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (internal quotations omitted).

### a. Minimum Contacts

The first step of the specific jurisdiction analysis requires that the nonresident defendant have minimum contacts and fair warning within the forum. *See Morgan, Lewis & Bockius LLP*, 401 Ill. App. 3d at 954. The requirements of minimum contacts and fair warning are satisfied if "the defendant has (1) purposefully directed his activities at Illinois residents, (2) reached out beyond one state to create continuing relationships with citizens of another state, or (3) purposefully derived benefits from his interstate activities." *Kalata v. Healy*, 312 Ill. App. 3d 761, 769 (1st Dist. 2000).

Gramercy maintains that it does not have the minimum contacts or fair warning within Illinois. Gramercy includes the supporting affidavit of Robert Lanava ("Lanava"), the chief compliance officer and head of operations of Gramercy. The affidavit includes the following facts: that Plaintiffs (Michigan, Delaware, Connecticut and/or New York) and Gramercy Defendants (Connecticut, Delaware and/or New York) reside outside of Illinois; that Plaintiffs and Gramercy never met in Illinois; that no communications between the parties was sent to or from Illinois; that all transactions concerning Plaintiffs in which the Gramercy Defendants were involved took place in Connecticut, New York, or outside the United States; and

that none of Gramercy's officers, directors, employees or agents ever traveled to or conducted business in Illinois.

In response, Plaintiffs argue that Gramercy purposefully directed its activities at Illinois by engaging with BDO, an Illinois-headquartered company, to develop and promote the Distressed Debt Strategy to the Kaufmans.

In reply, Gramercy argues that Plaintiffs' affidavits fail to offer any specific or credible facts to rebut the supporting affidavit of Lanava.

### 1. Competing Affidavits

When a court is faced with competing affidavits submitted on a motion challenging personal jurisdiction, "conflicts will be resolved in favor of the plaintiff for the purpose of establishing whether a prima facie case for personal jurisdiction has been shown." *Keller v. Henderson*, 359 Ill. App. 3d 605, 611 (2nd Dist. 2005). However, in order to establish a genuine conflict, Plaintiffs must come forward with credible evidence specifically countering the facts alleged in Gramercy's affidavit. *See Kutner v. DeMassa*, 96 Ill. App. 3d 243, 248 (1st Dist. 1981) (taking the defendant's affidavit to be true where the plaintiff's counter-affidavit failed to rebut statements that defendant did not have an agency relationship with other parties and was not part of any alleged conspiracy).

Here the Court notes that Plaintiffs' affidavits do not specifically rebut the facts contained in the Lanava's affidavit, nor do Plaintiffs' affidavits make substantive statements regarding jurisdiction in Illinois (*see* Section III. A, *supra*).

Thus, for purposes of adjudicating this motion, the unrebutted statements in the affidavit of Lanava must be taken as true. *See Kutner*, 96 Ill. App. 3d at 248. Even assuming Plaintiffs raised a genuine conflict within the affidavits and all conflicts are resolved in their favor, the Court finds that Plaintiffs fail to show that Gramercy has the necessary minimum contacts and 'fair warning' in Illinois.

### 2. Illinois-Based Counsel

Plaintiffs contend that Gramercy utilized Illinois based-counsel, Richard Lipton, ("Lipton"), an attorney in the Chicago office of McDermott Will & Emery ("MWE"), to help prepare the documents and opinions necessary to market and implement the Distressed Debt Strategy. However, even if Gramercy hired an Illinois lawyer, the Supreme Court held in *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014), that a "minimum contacts analysis looks to the forum itself, not the defendant's contacts with persons who reside there." Here Plaintiffs draw only a possible connection with Lipton, an Illinois resident, but they fall short of

establishing a connection between Gramercy and the forum itself. Thus, the Court finds that Plaintiffs' argument regarding Lipton does not establish that Gramercy had minimum contacts with Illinois.

### 3. Illinois-Based Bank and Wire Transfer

Plaintiffs argue that Gramercy routed wire transfers regarding client investments in the Distressed Debt Strategy through a bank in Illinois. However, the record shows that Gramercy had an account with Citibank in New York and that Citibank used First Chicago Bank as a correspondent bank to facilitate the interstate transfer of funds. Thus, the Court finds that this connection is far too distant to establish that Gramercy had minimum contacts with Illinois.

### 4. Invoices and Fees with BDO

Plaintiffs maintain that Gramercy sent invoices to BDO's offices in Illinois and that this creates a connection between Gramercy and the forum. The Court finds that BDO's decision to process invoices in Illinois is not attributable to Gramercy under a minimum contacts analysis. Rather, the fees in question were remitted to Gramercy by clients located throughout the country and merely routed through Illinois by BDO for administrative purposes. Therefore, Gramercy did not establish minimum contacts by sending invoices and fees to BDO

### 5. Communications with Illinois

Plaintiffs argue that Gramercy had numerous communications directed at Illinois. However, the record shows that many of the cited communications do not show Gramercy directing its activities "to the forum itself". *See Walden*, 134 S. Ct. at 1122. The Court also notes that when as here a "contract is neither negotiated nor performed in the forum state, communications . . . into the forum state, standing alone, are insufficient to establish specific jurisdiction over a nonresident defendant." *CF Indus. v. Ben-Trei, Ltd.*, 09 C 1353, 2009 WL 2765972 at *3 (N.D. Ill. Aug. 27, 2009). Therefore, Gramercy does not establish minimum contacts by sending communicating with BDO

Finally, the Court notes that Gramercy did not have 'fair warning' as both Plaintiffs and Gramercy Defendants reside outside of Illinois and none of the alleged transactions in which the Gramercy Defendants were involved, concerning Plaintiffs, took place in Illinois.

Therefore, the Court finds that Gramercy does not have the necessary minimum contacts with Illinois arising from its relationship with Plaintiffs such that it had fair warning that it may be required to defend itself in Illinois.

### b. Arising Out of Forum

The second part of the specific jurisdiction analysis requires that an action arise out of or relate to Gramercy's forum contacts. *Viktron Ltd. Partnership v. Program Data, Inc.*, 326 Ill. App. 3d 111, 121 (1st Dist. 2001). Gramercy argues that Plaintiffs' claims do not directly or indirectly arise out of Gramercy's forum contacts with Illinois. Likewise, Gramercy contends that it never had an agency relationship with BDO or any non-Gramercy Defendant.

In response, Plaintiffs contend that their cause of action arises from the Distressed Debt Strategy that Gramercy allegedly developed and marketed through its contacts with BDO and Lipton in Illinois.

The Court finds that Plaintiffs' claims do not directly arise out of Gramercy's limited communications with residents of Illinois. First, whether or not BDO or non-Gramercy defendants are subject to the Court's jurisdiction is irrelevant to the Gramercy Defendants, as jurisdiction must be independently assessed for each defendant. *See Rush* v. *Savchuk*, 444 U.S. 320, 332 (1980). Specific jurisdiction must arise from a defendant's forum contacts, not the contacts of a third-party. *See Walden*, 134 S. Ct. 1115 (2014) ("[T]he relationship must arise out of contacts that the defendant himself creates with the forum state."). Here Plaintiffs do not establish Gramercy's forum contacts. Instead, they only provide a limited connection to Illinois through the non-Gramercy defendants.

Second, Illinois Courts have held that a plaintiff's cause of action must arise directly from the defendant's forum contacts. *See Spartan Motors, Inc. v. Lube Power, Inc., Co.*, 321 Ill. App. 3d 832, 857 (1st Dist. 2001). Here the communications that Plaintiffs cite do not involve substantive discussions of Plaintiffs' investments and fail to show any Gramercy activity directed at the forum.

Therefore, the Court finds that Plaintiffs' claims against Gramercy do not arise out of Illinois.

### c. Reasonable to Require Litigation

The third part of the specific jurisdiction analysis requires that the Court consider whether it is reasonable to require the nonresident defendants to litigate in the forum state. *See Morgan, Lewis & Bockius LLP*, 401 Ill. App. 3d at 954; *see also Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). Under the Illinois Constitution's due process guarantee, "a court may exercise jurisdiction over a defendant only

when it is fair, just and reasonable to require a nonresident defendant to defend an action in Illinois considering the quality and nature of the defendant's acts which occurred in Illinois or which affect interests located in Illinois." The Court considers three relevant factors[1] in determining the reasonableness of requiring the defendant to litigate in Illinois: (1) the burden on the defendant of defending the action in the forum state, (2) the forum state's interest in adjudicating the dispute, and (3) the plaintiff's interest in obtaining effective relief. *Russell v. SNFA*, 2013 IL 113909).

Plaintiffs argue that there is little burden on Gramercy in defending this action in Illinois because it previously retained counsel and used a bank account in Illinois. Plaintiffs further contend that the State of Illinois has an interest in adjudicating the dispute given Gramercy's involvement in the Distressed Debt Strategy. Finally, Plaintiffs maintain that obtaining effective relief is advanced by keeping Gramercy in the instant lawsuit rather than having to institute multiple proceedings in various jurisdictions.

The Court finds that it is not reasonable to require Gramercy to defend this action as maintenance of the instant matter offends the traditional notions of fair play and substantial justice. Plaintiffs have no interest in obtaining effective relief in Illinois and Illinois has no interest in this dispute, as Gramercy Defendants and Plaintiffs reside elsewhere.

Finally, like Gramercy, the Court notes that there is also no basis for it to exercise general or specific jurisdiction individually over Koenigsberger.

Koenigsberger, a resident of New York, does not maintain the type of pervasive in-state contacts warranting the exercise of general jurisdiction over a nonresident defendant. (*See* Section II. A, *infra*.). Additionally, Plaintiffs have failed to allege that Koenigsberger has the necessary contacts with Illinois, in connection with the transactions underlying Plaintiffs' claim, to warrant this Court to exercise specific jurisdiction over a nonresident defendant.

## C. CONCLUSION

Based on the foregoing, Gramercy and Koenigsberger are not subject to personal jurisdiction in Illinois and their motion to dismiss for lack of personal jurisdiction is **GRANTED**.

---

[1] Neither party discusses the interests of the other affected forums in the efficient judicial resolution of the dispute and the advancement of substantive social policies.

## III.    HÉLIE'S MOTION TO DISMISS

Defendant Hélie, a former employee of Gramercy, joins in the contemporaneously-filed motion by Gramercy Defendants to dismiss this action for lack of personal jurisdiction and adopts all arguments therein which are applicable to him.

### A. GENERAL JURISDICTION

Plaintiffs do not attempt to allege that Hélie is subject to general jurisdiction. (*see* Section II. A, *infra*.). Further, Hélie resides in New York and he does not have the type of pervasive in-state contacts warranting this Court to exercise general jurisdiction over a nonresident defendant. Therefore, Hélie is not subject to general jurisdiction.

### B. SPECIFIC JURISDICTION

The Court considers whether the three criteria for specific jurisdiction are met. *See Morgan, Lewis & Bockius LLP*, 401 Ill. App. 3d at 954. Plaintiffs plead in their complaint that Hélie "has done and is doing business in Illinois" and "that he has committed torts in Illinois."

Hélie contends that these allegations represent bare legal conclusions "which do no more than parrot statutory provisions for long-arm jurisdiction." Hélie further argues that there are no facts pled in the complaint demonstrating any nexus between Plaintiffs' causes of action, Hélie, and Illinois.

The Court finds that Hélie is not subject to specific jurisdiction in Illinois. First, Plaintiffs do not present credible evidence specifically countering the facts alleged in Hélie's affidavit. *See Kutner*, 96 ll. App. 3d at 248.
Thus, for purposes of adjudicating this motion, the unrebutted statements in the affidavit of Hélie must be taken as true. *See Kutner*, 96 ll. App. 3d at 248.

These unrebutted statements show that Hélie is a New York resident and is not domiciled in Illinois; Plaintiffs are Michigan residents; Plaintiffs and Hélie never met in Illinois and never communicated to or from Illinois; none of the transactions underlying the parties' investments took place in Illinois; and the relevant contracts were drafted, performed, and executed outside of Illinois.

Second, these unrebutted facts show that Hélie does not have the necessary minimum contacts with Illinois to be subject to specific jurisdiction. The Court is also unconvinced by Plaintiffs' arguments that Hélie's communications, and his various connections with Gramercy, somehow create these minimum contacts with Illinois or provide him with 'fair warning.'

Third, Illinois Courts have held that a plaintiff's cause of action must arise directly from the defendant's forum contacts. *See Spartan Motors, Inc. v. Lube Power, Inc., Co.*, 321 Ill. App. 3d 832, 857 (1st Dist. 2001). Here Plaintiffs' claim against Hélie does not directly arise from the three communications that Plaintiffs cite as these communications fail to show any activity by Hélie directed at the forum.

Finally, the Court finds that it is not reasonable for Hélie to defend this action in Illinois. (*see* Section II. B. c., infra).

## C. CONCLUSION

Therefore, Hélie is not subject to personal jurisdiction in Illinois and his motion to dismiss for lack of personal jurisdiction is **GRANTED**.

## IV.  ORDER

For the reasons stated, it is hereby **ORDERED**:

(1) Defendant Gramercy and Koenigsberger's motion to dismiss, for lack of personal jurisdiction is **GRANTED**;

(2) Defendant Hélie's motion to dismiss, for lack of personal jurisdiction is **GRANTED**;

(3) Plaintiffs' claims are dismissed with prejudice as to Defendant Gramercy, Koenigsberger and Hélie;

(4) This case is continued for a case management date of December 8, 2014, at 9:00 a.m. without further notice.

ENTERED,

_____
Judge John C. Griffin, No. 1981

ENTERED
JUDGE JOHN C. GRIFFIN-1981

NOV 26 2014

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK